UNITED STATE DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| STEPHANIE PIAZZA-NIEVES, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. 6:20-cv-01224-ACC-LRH |
| WAL-MART STORES EAST, LP, | ) |
| Defendant. | ) |

## DEFENDANT'S RESPONSE TO MOTION TO REMAND

Defendant WAL-MART STORES EAST, LP ("Walmart" or "Defendant"), by and through its undersigned attorneys, hereby responds in opposition to Plaintiff STEPHANIE PIAZZA-NIEVES's ("Plaintiff") Motion to Remand filed July 23, 2020 [ECF 8] as follows:

### I. INTRODUCTION AND PROCEDURAL HISTORY

On or about June 3, 2020, Plaintiff Stephanie Piazza-Nieves filed a Complaint in the Circuit Court of the Ninth Judicial Circuit in and for Osceola County. *See* Complaint ("Compl.")(Dkt. No. 1-1). In the Complaint, Plaintiff alleges that while working at Walmart she was discriminated against and harassed on the basis of her sex and pregnancy. Compl., ¶¶ 25, 29. She also claims she was unlawfully terminated for complying with a witness subpoena. Compl. ¶¶ 35-38. Plaintiff avers she has been damaged in an amount exceeding $30,000.00. Compl. ¶ 1. Plaintiff seeks "compensation for lost wages, benefits, and other remuneration," "front pay," "back pay plus interest, pension rights, and all benefits; any other compensatory damages, including emotional distress, allowable at law; punitive damages; prejudgment interest on all monetary recovery obtained; all costs and attorney's fees." Compl. "WHEREFORE" paragraphs. Compensatory damages, lost wages, punitive damages,

and attorneys' fees are all recoverable pursuant to § 760.11(5), Florida Statutes.

On July 9, 2020 Walmart timely removed the state court action to this Court based on diversity jurisdiction. *See* Notice of Removal (ECF 1). Plaintiff has now filed a Motion for Remand in which, despite refusing to admit her damages are less than $75,000, she argues Walmart has failed to provide the Court with adequate evidence showing the jurisdictional amount for diversity cases has been met. Instead, Plaintiff claims Walmart was required to introduce a pre-suit demand, email correspondence or discovery to support its Notice of Removal, even though none of those things exist in this case, nor are they likely to exist in every case at the time a defendant is required to file for removal. *See* 28 U.S.C. § 1446(b) (notice of removal to be filed within thirty days from the date upon which the summons and complaint are served on it). Here, even though Plaintiff refuses to concede the amount of her alleged damages, the allegations in her Complaint are more than sufficient to establish the amount in controversy above the threshold for federal diversity jurisdiction. Therefore, this Court should deny Plaintiff's Motion for Remand.

## II. LEGAL ARGUMENT

### A. Applicable Standards and Eleventh Circuit Case Law.

Where the basis for federal jurisdiction is diversity under 28 U.S.C. § 1332(a), the removing defendant has the burden of demonstrating complete diversity of citizenship and an amount in controversy greater than $75,000. *See* 28 U.S.C. § 1332(a). When, as is true here, damages are not specified in the state-court complaint, the defendant seeking removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014) (citing

28 U.S.C. § 1446(a)). However, because Plaintiff, by filing her Motion to Remand, has challenged Walmart's allegation that the amount in controversy exceeds the jurisdictional threshold, Section 1446(c)(2)(B) provides removal is proper "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the [jurisdictional threshold]."

The preponderance of evidence standard, critically, does not require a removing defendant "to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010); *Dart*, 135 S. Ct. at 554 ("'[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.'") (quoting H.R. Rep. No. 112–10, p. 16 (2011)). Consistent with this principle, the Eleventh Circuit has directed district courts, when assessing the propriety of removal, not to "suspend reality" but to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations[,]" using "judicial experience and commonsense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Pretka*, 608 F.3d at 754.

Critically, the question is not whether Plaintiff is likely to recover an amount in excess of $75,000, but whether it is possible she could. *See S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (finding the amount in controversy is not discounted by the probability of a plaintiff's success on the merits) (citing *Pretka*, 608 F.3d at 751); *McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 731 (11th Cir. 2014) ("Any inquiry into whether McDaniel *would* actually recover these amounts is unnecessary and inappropriate. For purposes of establishing jurisdiction, it is enough to show that he *could*.")

(emphasis in original). That is, governing removal case law instructs district courts to analyze the amount in controversy from a wide angle, by estimating what "will be *put at issue* during the litigation," not what the plaintiff is "ultimately likely to recover." *S. Fla. Wellness*, 745 F.3d at 1315 (citing *Pretka*, 608 F.3d at 772) (internal quotation omitted) (emphasis added).

    **B.    Walmart Has Demonstrated Plaintiff's Claims Exceed The Minimum Amount In Controversy For Diversity Jurisdiction.**

        **1.    Walmart Has Conservatively Calculated Plaintiff's Claimed Economic Damages.**

            **a.    Walmart's Back Pay Calculation Is Proper.**

There is ample case law, including case law affirmed by the Eleventh Circuit, standing for the proposition courts should calculate back pay through trial. *See, e.g., Wineberger v. RaceTrac Petroleum, Inc.*, 672 F. App'x 914, 917 (11th Cir. 2016) (affirming district court's estimate of damages for jurisdictional purposes, which included an estimation of back pay through the date of the anticipated trial); *Sheehan v. Westcare Found., Inc.*, Case No. 8:12-CV-2544-T-33TBM, 2013 WL 247143, at *2 (M.D. Fla. Jan. 23, 2013)("[B]ack pay for purposes of the amount in controversy requirement should be calculated to the date of the trial."); *Pope v. 20/20 Commc'ns, Inc.*, Case No. 8:15-CV-1774-30JSS, 2015 WL 5165223, at *2 (M.D. Fla. Sept. 2, 2015) ("[T]his court has previously held that back-pay damages may be calculated through the proposed date of trial"); *Hendry v. Tampa Ship, LLC*, Case No. 8:10-CV-1849-T-30TGW, 2011 WL 398042, at *2 (M.D. Fla. Feb. 4, 2011) (calculating back pay from plaintiff's termination to a projected trial date one year after the date of removal); *Fusco v. Victoria's Secret Stores, LLC*, 806 F. Supp. 2d 1240, 1244 (M.D. Fla. 2011) ("back pay for purposes of the amount in controversy requirement should be

calculated to the date of trial"); *Hendry v. Tampa Ship, LLC*, No. 8:10–cv–1849, 2011 WL 398042, *2 (M.D. Fla. Feb. 4, 2011) ("Back pay is generally calculated from the date of the adverse employment action to the date of judgment."); *Cashman v. Host Int'l, Inc*., Case No. 8:10-CV-1197-T-30MAP, 2010 WL 4659399, at *1 (M.D. Fla. Nov. 9, 2010) (noting that "back pay is generally calculated from the date of the adverse employment action to the date of judgment," and estimating a trial date of at least 12 months from the date of removal).

Here, at the time of her termination about September 2, 2018 (Compl., ¶ 38), Plaintiff earned $15.61 per hour, and in the 8 weeks of her employment she worked an average of 28.4 hours per week ($443.32 per week). As of the date of removal, it had been approximately 100 weeks since Plaintiff's employment ended. Accordingly, Plaintiff's back pay to the date of removal was approximately $44,332.40.[1] Adding an additional year of back pay to account for the expected time between now and trial (152 weeks total), Plaintiff could recover approximately $67,384.64 in total back pay. The Eleventh Circuit, as do this Court and other courts within the same circuit, agrees that considering back wages through the date of trial is a correct means of calculation such damages for the purposes of removal. As such, the sum of $44,332.40 has been established, by a preponderance of the evidence, as being a portion of the amount in controversy in this case.[2]

### b. Walmart's Front Pay Calculation is Also Correct.

Plaintiff does not directly address the issue of whether front pay can be a part of a

---

[1] Plaintiff agrees with this back wages calculation to the date of removal. *See* Plaintiff's Motion to Remand at 8.
[2] Defendant's calculation of economic damages accounts for Plaintiff's attempt to recover the value of lost employment benefits in addition to lost wages, meaning Plaintiff is actually seeking to recover more in economic damages than either party has calculated. *See* Compl. "WHEREFORE" paragraphs (seeking [r]einstatement of Plaintiff to a position comparable to her prior position, with back pay plus interest, pension rights, and all benefits… allowable at law").

proper calculation of the amount in controversy. To be clear, Plaintiff is expressly seeking reinstatement or an award of front pay. *See* Compl. "WHEREFORE" paragraphs (seeking "[r]einstatement of Plaintiff to a position comparable to her prior position, or in the alternative, front pay"). This Court should consider Plaintiff's claimed entitlement to front pay damages in assessing the amount in controversy. *See Wineberger v. Racetrac Petroleum, Inc.,* 672 F. Appx. 914, 917 (11th Cir. 2016) (holding district court was correct to include front pay in its calculation of the amount in controversy). Calculating an award of one year of front pay is not unreasonable. *See*, *e.g.*, *Wineberger v. Racetrac Petroleum, Inc.,* No. 5:14-cv-653-Oc-30PRL, 2015 WL 225760, *3 (M.D. Fla. Jan. 16, 2015) (including one year of front pay of one year in its calculation of the amount in controversy); *Gonzalez v. Honeywell Int'l, Inc.*, No: 8:16–cv–3359–T–30TGW, 2017 WL 164358, *2 ("Courts in this Circuit have previously held it is reasonable to add one year of front pay to the amount in controversy" in employment discrimination cases).

Here, Defendant conservatively estimated $23,052.64 of front pay is in controversy, having calculated that amount based on the same rate of $443.32 per week used in calculating back pay. Plaintiff offers nothing to suggest Defendant's calculation is inflated. Plaintiff's request for reinstatement or front pay brings the total amount of economic damages in controversy to at least **$67,385.04** (recognizing Plaintiff also seeks lost benefits).[3]

    2.    **Plaintiff's Argument That Her Compensatory Damages Are Speculative Contradicts Her Pleading.**

---

[3] This total amount of economic damages increases to **$90,437.28** should this Court use the amount of back wages through trial ($67,384.64) plus the one year of front pay to establish

Where litigants seek compensatory damages in the form of pain and suffering, such as Plaintiff does here, such damages may alone be sufficient to establish the jurisdictional amount for a diversity action. *See Estevez-Gonzalez v. Kraft, Inc.*, 606 F. Supp. 127, 129 (S.D. Fla. 1985) (including unspecified amount of compensatory damages for "physical and mental pain, physical handicap, impairment of working ability, injuries permanent or continuing in nature, and medical expenses"); *Harmony Homes, Inc. v. United States*, 890 F. Supp. 1032, 1034 (M.D. Fla. 1995) (noting inclusion of "pain and suffering" in calculation of amount in controversy); *Bartley v. Starwood Hotel & Resorts Worldwide, Inc.*, No. 07-80637-CIV, 2007 WL 2774250, at *1 (S.D. Fla. Sept. 24, 2007) (finding that complaint "clearly established" amount in controversy based, in part, on general allegations of pain, mental anguish, scarring, disfigurement, loss of enjoyment of life, medical expenses, etc.).

In arguing this Court should not consider her emotional distress damages, Plaintiff contends her damages are too speculative. *See* Plaintiff's Motion to Remand at 7. This argument contradicts Plaintiff's own pleading, where she specifically requests an award of damages for emotional distress. The fact Plaintiff has not placed a monetary value on her non-economic damages does not make them too speculative for this Court to consider, as the Eleventh Circuit has explained:

> [P]reventing a district judge from acknowledging the value of the claim, merely because it is unspecified by the plaintiff, would force the court to abdicate its statutory right to hear the case. This rule would reward plaintiffs for employing the kinds of manipulative devices against which the Supreme Court has admonished us to be vigilant.
>
> For instance, a plaintiff could 'defeat federal jurisdiction simply by drafting his pleadings in a way that did not specify an approximate value of the claims and thereafter provide the defendant with no details on the value of the claim.' Plaintiffs skilled in this form of artful pleading could, with this 'trick,' simply

'make federal jurisdiction disappear.'

*Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1064 (11th Cir. 2010) (citing *Pretka*, 608 F.3d at 766).

Emotional distress damages in the range of $5,000-$30,000 are proper where a FCRA complaint merely alleges emotional distress in the nature of "that which would have been experienced by most individuals suddenly terminated from their jobs for unsavory reasons." *Wineberger*, 2015 WL 225760 at *4, *aff'd by Wineberger*, 672 F. Appx. at 917. The Eleventh Circuit has also held that objective medical testimony is not necessary to support an award of emotional distress damages under FCRA. *See Munoz v. Oceanside Resorts, Inc*., 223 F.3d 1340, 1348-49 (11th Cir. 2000) (affirming jury award of $150,000 for emotional distress caused by illegal termination under FCRA awarded on the basis of lay testimony).

Plaintiff cites no case law contradicting the fact that courts may consider jury verdicts rendered in matters raising similar claims and injuries in determining the amount in controversy. *See, e.g., Payne v. J.B. Hunt Transp., Inc.,* 154 F. Supp. 3d 1310, 1314 (M.D. Fla. 2016) (reviewing evidence of settlements and jury verdicts together with the allegations of plaintiff's complaint to conclude that "it [was] more likely than not that the amount in controversy exceeds $75,000."); *Alshakanbeh v. Food Lion, LLC*, 2007 U.S. Dist. LEXIS 20746, at *4-7 (M.D. Fla. Mar. 23, 2007) (considering information from defendant based upon defendant's review of published jury verdicts and damages awards involving claims similar to plaintiff's in determining that the requisite $75,000 minimum had been established); *Gavronsky v. Walgreen Co*., No. 309CV1167J12TEM, 2010 WL 717485, at *3 (M.D. Fla. Feb. 26, 2010)(the use of prior jury verdicts for employment discrimination can

properly support an estimation of compensatory and punitive damages).

In the present case, Plaintiff claims she was harassed and then terminated from her position because of her pregnancy, and this caused her emotional distress. Courts have awarded compensatory damages in cases involving pregnancy discrimination claims well in excess of the jurisdictional amount required. *See Guadalupe Juarez v. Tornado Bus Company*, 2013 WL 8086131 (M.D. Fla. Oct. 2, 2013) (alleging defendant discriminated against plaintiff based on sex and/or pregnancy in violation of Title VII and the FCRA and retaliated against her for filing a charge of discrimination with the EEOC; verdict after court's reduction due to statutory caps: $200,000 in compensatory damages under the FCRA); *Lisa M. Holland v. David A. Gee*, 2010 WL 9446050 (M.D. Fla. July 29, 2010) (plaintiff claimed she was terminated based upon pregnancy; verdict included $80,000 for emotional distress); *Maria E. Benitez v. University of Miami*, 2006 WL 7070061 (Fla. Oct. 11, 2006) (plaintiff alleged retaliatory firing for complaining to EEOC she was discriminated against for taking maternity leave; jury award included $45,000 for pain and suffering). Thus, assuming emotional distress damages anywhere from the $5,000 discussed in *Wineberger* to the $200,000 awarded in *Juarez*, Defendant's suggestion Plaintiff's compensatory damages be considered in the amount of $25,000 is quite conservative, and is an appropriate amount to include as part of the amount in controversy for the purposes of removal.[4]

### 3. The Court Must Consider Plaintiff's Punitive Damages Claim As A Component Of The Amount In Controversy.

It is beyond question courts must include punitive damages in a calculation of the

---

[4] Even using the low end of $5,000, this, plus the established economic damages through the date of removal discussed in Section II(B)(1) above, brings the running tally of the amount in controversy to $72,385.04, not yet

jurisdictional amount in controversy. *See Roe*, 613 F.3d at 1064; *Gavronsky*, 2010 WL 717485, at *3. Contrary to Plaintiff's argument, it is not necessary for Defendant to establish the amount of punitive damages Plaintiff might be awarded or that such damages certainly will be awarded. *Gonzalez v. Honeywell Int'l, Inc.*, Case No. 8:16-CV-3359-T-30TGW, 2017 WL 164358, at *3 (M.D. Fla. Jan. 17, 2017) (discussing available compensatory and punitive damages, providing: "[t]he Court need not pinpoint the exact dollar figure of each of these forms of relief to recognize that their value adds thousands of dollars to the amount in controversy"); *Cowan v. Genesco, Inc.*, Case No. 3:14-CV-261-J-34JRK, 2014 WL 3417656, at *4 (M.D. Fla. July 14, 2014) (noting the availability of punitive damages in reaching the amount in controversy in an FCRA action, and noting that it was not required to show that the plaintiff will actually recover the amount in controversy, but "only that, he *could*." (emphasis in original)).

Instead, Defendant's burden is to offer facts showing "punitive damages in an amount necessary to reach the jurisdictional minimum are at issue—that is, that such damages *could* be awarded." *McDaniel*, 568 F. App'x at 731 (emphasis in original). The mere fact Plaintiff has not placed a value on her claim for punitive damages does not prevent this Court from considering the potential for such damages to comprise a significant component of the amount in controversy. As the Eleventh Circuit has explained:

> Indeed, if courts were to rely solely on a plaintiff's damage statements . . . it is difficult to imagine a punitive damages suit that could be removed against a plaintiff's wishes. Both policy and precedent counsel against rewarding such obfuscating tactics.

*Roe*, 613 F.3d at 1064.

---

including punitive damages or attorneys' fees. ($67,385.04 + $5,000).

Here, Plaintiff has expressly demanded punitive damages as a form of relief, *see* Compl. at ¶¶ 23, 31, and "WHEREFORE" paragraphs (describing Walmart's conduct as "willful and done with malice" and seeking "[p]unitive damages"). Under the FCRA, Plaintiff may seek punitive damages of up to $100,000 as a potential remedy. *See* Fla. Stat. § 760.11(5). And, juries have awarded such substantial punitive damages verdicts in cases with similar issues as the present case. *See Juarez*, 2013 WL 8086131 (alleging defendant discriminated against plaintiff based on sex and/or pregnancy and retaliated against her; verdict after court's reduction due to statutory caps included $100,000 in punitive damages under the FCRA); *Benitez*, 2006 WL 7070061 (plaintiff alleged retaliatory firing for complaining to EEOC she was discriminated against for taking maternity leave; jury awarded plaintiff $100,000 for punitive damages).[5]

### 4. Plaintiff's Claim For Attorneys' Fees Should Be Included When Calculating The Amount In Controversy.

Plaintiff agrees she may recover attorneys' fees pursuant to the FCRA, but argues the attorney's fees component of her damages calculation would only include those incurred at the time of removal. *See* Plaintiff's Motion to Remand at 6. She claims at removal, she had incurred only $500 in fees in drafting Plaintiff's Complaint and discovery.[6] *See id.*

District courts may make "reasonable deductions and inference and . . . rely on

---

[5] Even if Plaintiff received 1/10 of the $100,000 in punitive damages available under the FCRA, her low-end damages exceed the jurisdictional threshold at $82,385.04, not yet including attorneys' fees. ($67,385.04 + $5,000 + $10,000).

[6] Plaintiff does not include in her calculation any time spent by counsel inquiring into Plaintiff's claims prior to filing suit, a requirement of Rule 11, Federal Rules of Civil Procedure, and section 57.105, Florida Statutes. It is reasonable to assume counsel made, at the very least, a cursory investigation into Plaintiff's claims, and some amount should be attributable to that time (10 hours is not unreasonable for an initial inquiry and drafting a complaint and discovery), as well as $400 for the state court filing fee.

judicial experience" in calculating an estimation of damages to determine the amount in controversy, including attorneys' fees. *See Wineberger,* 672 F. App'x at 917 (finding the district court did not err in estimating back pay, front pay, noneconomic damages, and $10,000 in attorneys' fees in FCRA discrimination action). Numerous Florida federal courts have found the proper measure of attorneys' fees in addressing a motion to remand is an estimation of fees *through the time of trial*. *See Gonzalez*, 2017 WL 164358, at *3 (in determining defendant showed that the amount in controversy more likely than not exceeded $75,000 in FCRA discrimination matter, citing defendant's evidence of cases awarding attorney fees for between 450 to 1050 hours, the amount of time spent litigating the employment discrimination matters through trial); *Hatem v. QBE Specialty Ins. Co.*, Case No. CV1521877CIVSCOLA, 2015 WL 11237647, at *3 (S.D. Fla. Sept. 22, 2015) (calculating attorney fees based on expert evidence of the total amount of time required to litigate claim); *DO Restaurants, Inc. v. Aspen Specialty Ins. Co.*, 984 F. Supp. 2d 1342, 1346 (S.D. Fla. 2013) (relying on affidavit of an attorney familiar with the amount of time and hourly rates charged in litigating similar cases to trial to calculate projected attorney fees); *Mirras v. Time Ins. Co.,* 578 F. Supp. 2d 1351, 1353 (M.D. Fla. 2008) (calculating projected attorney's fees through the end of litigation in calculating amount in controversy). Walmart estimates Plaintiff's counsel will expend 200 hours prosecuting Plaintiff's case, which, at a conservative hourly rate of $250, equates to $50,000 in attorney's fees. Regardless, Walmart has already established in excess of $75,000 in economic, compensatory and punitive damages, and whether attorneys' fees are measured at the time of removal, $2,500, or at the time of trial, $50,000, is of no concern:

| TYPE OF DAMAGES | AMOUNT IN CONTROVERSY LOW END | AMOUNT IN CONTROVERSY HIGH END |
|---|---|---|
| Economic | $67,385.04 | $67,385.04 |
| Compensatory | $5,000 | $200,000 |
| Punitive | $10,000 | $100,000 |
| Attorneys' Fees | $2,500 | $50,000 |
| **TOTAL** | **$84,885.04** | **$417,385.04** |

## III. CONCLUSION

Based on the foregoing, Walmart properly removed this action to this Court. Accordingly, Walmart requests the Court deny the Motion to Remand and award Defendant such further relief as this Court deems just and proper.

Dated this 3rd day of August, 2020

Respectfully submitted,

LITTLER MENDELSON, P.C.
111 North Orange Avenue, Suite 1750
Orlando, Florida 32801
Telephone: (407) 393-2900
Facsimile: (407) 393-2929

By: */s/ Allison Wiggins*
Kimberly J. Doud, Esquire
Florida Bar No.: 523771
Email: kdoud@littler.com

Allison Wiggins, Esquire
Florida Bar No.: 105733
Email: awiggins@littler.com

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of August, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a copy via email to the following: Michael Bryan Sanchez, Esquire, The Pendas Law Finn, 625 E. Colonial Drive, Orlando, Florida 32803; email: Msanchez@pcndaslaw.com.

                                                    */s/ Allison Wiggins*
                                                    Allison Wiggins, Esquire