# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**STEPHANIE PIAZZA-NIEVES,**

      **Plaintiff,**

**v.**                                                          Case No:   6:20-cv-1224-Orl-22LRH

**WAL-MART STORES EAST, LP,**

      **Defendant.**

## ORDER

This cause comes before the Court on Plaintiff's Motion to Remand to state court. (Doc. 8). Defendant Wal-Mart Stores East, LP, ("Wal-Mart") filed a Response in Opposition. (Doc. 11). For the reasons set forth below, the Motion will be granted.

## I. BACKGROUND

The dispute in this case arises from Plaintiff's employment with and subsequent termination from Wal-Mart. Plaintiff began working for Wal-Mart in June 2013 and claims that while pregnant in 2018, she faced discrimination and harassment. (Doc. 1-1 at 6). Plaintiff states that she reported the discrimination on July 6, 2018 to Wal-Mart's Global Ethics Department. (*Id*.). On August 28, 2018, Plaintiff was subpoenaed to be a witness in state court which required her to be absent from work. (*Id*.). She was terminated that day for her absence. (*Id*.).

As a result, Plaintiff filed suit against Wal-Mart in the Ninth Judicial Circuit, in and for Orange County Florida on June 2, 2020, alleging three claims against Wal-Mart for violations of the Florida Civil Rights Act ("FCRA") for discrimination and harassment (Counts I and II respectively), and Florida Statute § 92.57 for her eventual termination (Count III). Wal-Mart was served on June 10, 2020, and on July 9, 2020, Wal-Mart timely removed the case to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332, alleging that it is a citizen of

Delaware and Arkansas, that Plaintiff is a Florida resident,[1] and that the amount in controversy exceeds $75,000. (Doc 1 at 3-4). Specifically, Wal-Mart makes the following allegations of citizenship regarding the different Wal-Mart based entities involved: Wal-Mart Stores East, LP, the corporate entity that operates the Walmart Store where Plaintiff was employed, is a Delaware limited partnership; the partners of Wal-Mart Stores East, LP are limited liability companies (WSE Management, LLC and WSE Investment, LLC) with Wal-Mart Stores East, LLC as the sole member; the sole member of Wal-Mart Stores East, LLC is Walmart Inc., a public corporation[2] incorporated in Delaware with its principal place of business in Arkansas. (*Id.* at 3-4). For the purposes of this Court's jurisdiction, Wal-Mart argues that it has sufficiently alleged diversity of citizenship between the parties based on Walmart Inc.'s status as a Delaware and Arkansas corporation and the Plaintiff's status as a Florida resident. Wal-Mart also argues that it has established that the jurisdictional amount required for this Court to exercise jurisdiction is met.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)). For this reason, "[t]he rule of construing removal statutes strictly and resolving doubts in favor of remand . . . is well-established." *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328–29 (11th Cir. 2006), *abrogated on other grounds by Dudley v. Eli Lilly and Co.*, 778 F.3d 909 (11th Cir. 2014). In the Eleventh Circuit, in cases such as the present case, "[w]here . . . the plaintiff has not pled a specific amount of damages, the moving defendant must prove by

---

[1] An allegation concerning residency does not equate to the citizenship necessary for diversity jurisdiction. *See Molinos Valle Del Cibao v. Lama*, 633 F.3d 1330, 1341–42 (11th Cir. 2011) ("Domicile is not synonymous with residence; one may temporarily reside in one location, yet retain domicile in a previous residence."). This issue will be discussed in more detail below.

[2] The citizenship of an incorporated business entity turns on the entity's state of incorporation and the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). The citizenship of an "unincorporated business association or entity" depends on the citizenship of its individual members. *See Scuotto v. Lakeland Tours, LLC*, No. 3:13-cv-1393, 2013 WL 6086046, at *1 (M.D. Fla. Nov. 19, 2013).

a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (citations omitted). Further, "[d]efendants may introduce their own affidavits, declarations, or other documentation" to prove jurisdiction so long as the "removal is procedurally proper." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 755 (11th Cir. 2010) (citations omitted).

When the amount in controversy is not apparent on the face of the complaint, a court will permit the use of "deduction, inference, or other extrapolation of the amount in controversy," however, these deductions and extrapolations are not without bounds. *See Pretka*, 608 F.3d at 753. Ultimately, when a defendant's specific factual allegations of jurisdiction are challenged, the defendant must support these allegations with "evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Id.* at 754. "[C]ourts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe v. Michelin N. Am. Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010).

### III. ANALYSIS

Wal-Mart removed this action on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). In Wal-Mart's Notice of Removal, it asserted as the removing party that there is diversity of citizenship between the parties and that, although Plaintiff's Complaint only detailed damages exceeding $30,000, the total damages at issue for lost wages, benefits, front pay, back pay, interest, pension rights, and attorney's fees demonstrate that the amount in controversy exceeds $75,000. (Doc. 1 at 5). Plaintiff contends that remand is necessary because Wal-Mart has not met its burden to show the requisite amount in controversy.

*A. Diversity of Citizenship*

As an initial matter, the Court notes that Wal-Mart has insufficiently alleged Plaintiff's citizenship. It is well-established that alleging a party's residence for jurisdictional purposes does not equate to citizenship. *See Molinos Valle Del Cibao v. Lama*, 633 F.3d 1330, 1341–42 (11th Cir. 2011) ("Domicile is not synonymous with residence; one may temporarily reside in one location, yet retain domicile in a previous residence."); *see also Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1268–69 (11th Cir. 2013); *Dyer v. Wal–Mart Stores*, Inc., 535 Fed. App'x. 839, 841 n.2 (11th Cir. 2013) (citing *McCormick v. Aderholt*, 293 F.3d 1254, 1257–58 (11th Cir. 2002)). Here, Wal-Mart has only alleged that Plaintiff is a resident of Florida. However, because that is a curable defect and Plaintiff's employment at a Florida Walmart Store suggests her Florida citizenship, the Court will consider whether Wal-Mart has sufficiently demonstrated the amount in controversy.

### *B. Amount in Controversy*

In its notice of removal, Wal-Mart asserts that the amount in controversy exceeds $75,000 based on Plaintiff's requests for back pay, front pay, compensatory damages, and punitive damages. Wal-Mart contends that Plaintiff's back pay amounts to $44,332.40, based on Plaintiff's hourly rate of $15.61 an hour for an average of 28.4 hours a week from the date she was terminated on September 2, 2018 to the date of removal. (Doc. 1 at 6). In its Response to Plaintiff's Motion to Remand, Wal-Mart further argued that the back pay damages could amount to $67,384.64 if calculated from the date of termination through the date of trial. (Doc. 11 at 5). Wal-Mart also asserts that Plaintiff's other requested damages would increase this amount by $23,052.64 in front pay (Doc. 1 at 7), at least $5,000 in compensatory damages for emotional distress, at least $10,000 for punitive damages, and a minimum of $2,500 for attorney's fees. (*Id*. at 13). On the low end of the estimate, Wal-Mart asserts that the amount in controversy is at least $84,885.04 but could reach up to $417,385.04. (*Id*.).

*1. Front and Back Pay*

When "calculating a back pay award, the trial court must determine what the employee would have earned had she not been the victim of discrimination." *Love v. N. Tool & Equip. Co.*, No. 08–20453–CIV, 2008 WL 2955124, at *3 (S.D. Fla. Aug. 1, 2008). Both parties agree that from the date of termination to the date of removal, Plaintiff has incurred $44,332.40 in back pay damages.[3] Wal-Mart asserts that in addition to the back pay calculated from the date of termination until removal, Plaintiff could recover an additional year of back pay through the date of the trial. Plaintiff contends that back pay, at least for amount in controversy purposes, is only calculated from the date of termination until removal.

The district courts within Florida have used different methods for calculating back pay for the purpose of establishing the amount in controversy. Some courts calculate back pay for this purpose to the date of trial. *See, e.g., Destel v. McRoberts Protective Agency, Inc.*, No. 03–62067–Civ, 2004 WL 746293, at *4 n. 3 (S.D. Fla. Feb. 17, 2004); *Deel v. Metromedia Rest. Servs., Inc.*, No. 3:05CV120/MCR, 2006 WL 481667, at *4 (N.D. Fla. Feb. 27, 2006) (citations omitted). Other courts have found that back pay should be calculated to the date of removal based on the Eleventh Circuit's opinion in *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007). *See Snead v. AAR Mfg., Inc.*, No. 8:09–cv–1733–T–30EAJ, 2009 WL 3242013, at *3 (M.D. Fla. Oct. 6, 2009) (finding that calculating back pay for amount in controversy purposes through the date of trial would be speculative; the court also stated that the cases that supported the defendant's argument that damages could be calculated through trial were decided pre-*Lowery*, which "drastically changed the analysis of removal"); *but see Pretka*, 608 F.3d at 747 (clarifying that its holding in *Lowery* only applied to cases removed pursuant to the second paragraph of 28 U.S.C. § 1446(b),

---

[3] "Plaintiff earned $15.61 per hour, and in the 8 weeks of her employment she worked an average of 28.4 hours per week ($443.32 per week). As of the date of removal, it had been approximately 100 weeks since Plaintiff's employment ended." (Doc. 11 at 5).

and stating that when *Lowery* refers to cases removed pursuant to the first paragraph 28 U.S.C. § 1446(a), those statements are dicta).

Although the Eleventh Circuit has not yet resolved this split,[4] Wal-Mart relies on the unpublished Eleventh Circuit decision in *Wineberger v. RaceTrac Petroleum, Inc.* in arguing that back pay should be calculated through the date of trial. 672 F. App'x 914 (11th Cir. 2016). "In *Wineberger* . . . the Eleventh Circuit affirmed a district court decision including estimates of back pay and attorney fees through trial, a year of front pay, compensatory damages in the $5,000 to $30,000 range, and $10,000 in punitive damages" in calculating the amount in controversy. *Balkum v. Pier 1 Imports (U.S.), Inc.*, No. 6:17-cv-1299-ORL-37DCI, 2017 WL 3911560, at *2 n.3 (M.D. Fla. Sept. 7, 2017) (citing 672 F. App'x at 914). Importantly, however, that decision is nonbinding, and it affirmed a district court decision under a "highly deferential" clear error standard. Wal-Mart also cites a number of Middle District of Florida decisions which calculated back pay damages through the date of trial for amount in controversy purposes. (Doc. 11 at 4). Similar to the *Wineberger* decision, however, these cases hold only persuasive value. It is well-established that this Court is only bound by published Eleventh Circuit decisions and United States Supreme Court decisions.

This Court is instead persuaded that damages for amount in controversy purposes "should be measured at the time of removal," *Pretka*, 608 F.3d at 751, and therefore calculates back pay only through the date of removal and not through a later, speculative date. *See Balkum*, 2017 WL 3911560 at *2. Although the Court may use "deduction, inference, or other extrapolation" in determining the amount in controversy, this fact does not "lend support for throwing a dart at a future trial calendar—assuming the case will actually be tried, or disregarding the almost certain

---

[4] *See Balkum v. Pier 1 Imports (U.S.), Inc.*, No. 6:17-cv-1299-ORL-37DCI, 2017 WL 3911560, at *2 n.3 (M.D. Fla. Sept. 7, 2017).

evidence of mitigation of wage loss damages." *Id*. (citing *Pretka*, 608 F.3d. at 753-754). Applying this logic, back pay through the date of removal in the amount of $44,332.40 will be counted towards the amount in controversy. The front pay calculation will also only be calculated from the date of termination until the date of removal, adding an additional $23,052.64[5] to the amount in controversy for a total of $67,385.04 in economic damages.

## 2. Attorney's Fees

Wal-Mart argues that this Court should make a reasonable inference as to the amount of attorney's fees incurred through the time of trial for purposes of the amount in controversy calculation. Wal-Mart estimates that Plaintiff's counsel will spend 200 hours trying this case which equates to $50,000 in attorney's fees at a rate of $250 an hour. "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Pretka*, 608 F.3d at 751 (citing *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1268 n.12 (11th Cir. 2009). Generally, attorney's fees are not included as part of the amount in controversy, unless they are allowed by statute or by contract. *Federated Mut. Ins. Co*., 329 F.3d at 809 n.4 (citation omitted). When determining whether the amount in controversy requirement is satisfied, this Court declines to speculate as to potential attorney's fees through resolution of the case at trial but considers only those attorney's fees incurred as of the time of removal. *See Montanez v. Integon Indem. Corp.*, No. 6:15-CV-25-ORL-22KRS (M.D. Fla. Apr. 1, 2015) (Doc. 20 at *5) (Conway, J.).

Both parties agree that at the time of removal, Plaintiff has alleged that only $500 in attorney's fees are at issue. (Doc. 11 at 11). Wal-Mart asserts that this Court may consider an estimate of attorney's fees through the date of trial for amount in controversy purposes. Again, this

---

[5] This amount is based on the same rate of $443.32 per week used in calculating back pay. (Doc. 11 at 6).

Court will not speculate as to the damages at some unknown time in the future to determine whether this Court can properly exercise subject matter jurisdiction now. As such, the only attorney's fees that will be considered in determining whether to remand this case will be the $500 spent at the time of removal, bringing the amount in controversy to $67,885.04.

*3. Compensatory and Punitive Damages*

Next, Wal-Mart argues that Plaintiff's compensatory damages for pain and suffering, as well as punitive damages for violations of the FCRA, should be considered in calculating the amount in controversy. Wal-Mart argues that emotional distress damages in the range of $5,000 to $30,000 should be considered in this FCRA case to calculate the amount in controversy, as well as $10,000 to $100,000 in punitive damages. In support, Wal-Mart cites cases from within the Middle District of Florida that have considered potential damages based on prior jury verdicts and settlements to meet the jurisdictional requirement of this Court. (Doc. 11 at 8). Wal-Mart argues that assuming emotional distress damages can be anywhere from the $5,000 discussed in the Eleventh Circuit's decision in *Wineberger* to the $200,000 awarded in *Juarez v. Tornado Bus Company*, 2013 WL 8086131 (M.D. Fla. Oct. 2, 2013), its suggestion that Plaintiff's compensatory damages be considered in the amount of $25,000 is quite conservative, and is an appropriate amount to include as part of the amount in controversy for the purposes of removal.

Wal-Mart does not, however, explain why damage amounts similar to those in *Wineberger* and *Juarez* would be awarded in this case, but merely implores this Court to speculate that the damages will be somewhere in that wide range. *See Balkum*, 2017 WL 3911560 at *3 (citing *Bragg v. Suntrust Bank*, No. 8:16–cv–139–T–33TBM, 2016 WL 836692, at *2 (M.D. Fla. Mar. 4, 2016)). Because Wal-Mart "can only speculate as to potential compensatory damages, the Court need not consider those damages in its analysis of whether the jurisdictional requirement has been met." *Bragg*, 2016 WL 836692 at *2 (citing *Golden v. Dodge–Markham Co.*, 1 F. Supp. 2d 1360, 1366

(M.D. Fla. 1998) ("Compensatory damages are extremely nebulous. Making a general blanket statement that, if Plaintiff prevails, compensatory damages could certainly entitle him to thousands of dollars, does not rise to the levels of proving, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.00."). Here, Wal-Mart focuses on the similarity of allegations in other FCRA cases without providing factual comparison or evidence that those plaintiffs sustained a similar kind of emotional harm or mental anguish. As such, "these comparators do not aid the Court" in the amount in controversy analysis. *See Balkum*, 2017 WL 391150 at *3. The burden is Wal-Mart's, and the proof is wanting.

Moreover, Wal-Mart attempts to add potential punitive damages to push the amount in controversy calculation over the $75,000 required for this Court to exercise jurisdiction. Wal-Mart argues that punitive damages must be considered in calculating the amount in controversy because such damages are warranted by statute and can reach up to $100,000. Wal-Mart cites several other Middle District of Florida cases which considered potential punitive damages in assessing the amount in controversy. (Doc. 11 at 10). Those cases, however, are distinguishable. In *Gonzalez v. Honeywell International, Inc.*, the court noted that once it was considering compensatory and punitive damages, the defendant had already proven that the amount in controversy likely exceeded the $75,000 required for the court to exercise jurisdiction on just the back pay and front pay at issue. No. 8:16-cv-3359-T-30TGW, 2017 WL 164358, at *3 (M.D. Fla. Jan. 17, 2017). In *Cowan v. Genesco, Inc.*, the plaintiff was seeking mental anguish and loss of dignity damages for wrongful termination and failure to promote on the basis of race and sex after he was routinely called offensive racial slurs, passed over for promotions, and disciplined for misconduct that he did not commit. No. 3:14-cv-261-J-34JRK, 2014 WL 3417656, at *1 (M.D. Fla. July 14, 2014). The court found that the combination of the plaintiff's racial and sexual discrimination claims, as pled, more likely than not exceeded the minimum jurisdictional requirement. Here, Wal-Mart has

not demonstrated that the amount in controversy will be met from the front and back pay alone and Plaintiff is not asserting damages for mental anguish and loss of dignity based on sex and race discrimination. As such, the reasoning of these cases is not persuasive.

Wal-Mart further relies on only one binding Eleventh Circuit decision, *Roe v. Michelin North America, Inc*., in arguing that Plaintiff should not be able to defeat diversity jurisdiction by drafting the complaint in a way that does not specify the amount of punitive damages she is seeking. 613 F.3d 1058, 1064 (11th Cir. 2010). While protecting the Court's ability to exercise jurisdiction is indeed valuable, the facts of the *Roe* case are distinguishable. The Eleventh Circuit in *Roe* was considering whether the available punitive damages could, alone, serve as the basis of the amount in controversy. *Id*. Notably, the *Roe* case involved a wrongful death suit in which the only available damages were punitive. *Id*. The court reasoned that the purpose of the Alabama wrongful death statute was to ensure the value of human life by making homicide expensive. *Id*. at 1065. Reasonably, the court found that such a wrongful death suit likely exceeded the $75,000 required for the court to exercise subject matter jurisdiction. *Id*. Here, the same cannot be said. This is not a wrongful death suit, and the Court has already calculated the economic damages at less than the requisite amount. The Court will not take Wal-Mart's speculation multiple steps further to exercise its limited jurisdiction over this case.

## IV. CONCLUSION

This case arises from violations of Florida statutes, brought in a Florida court by a Florida Plaintiff. "It is true that defendants should not be denied the right to a federal forum, nonetheless they must shoulder the burden of establishing subject matter jurisdiction." *Balkum*, 2017 WL 3911560 at *4. Wal-Mart has not met this burden and has instead demonstrated $67,885.04 in damages at the time of removal. Wal-Mart asks this Court to speculate that the damages will eventually, at some point in the future, exceed the requisite jurisdictional amount. Uncertainties,

however, are resolved in favor of remand. *Burns. v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Thus, the Court will remand this suit.

Based on the foregoing, it is ordered as follows:

1. Plaintiff's Motion to Remand (Doc. 8) is **GRANTED**, and this case is hereby remanded to the state court from which it was removed.

2. The Clerk is **DIRECTED** to mail a certified copy of the order of remand to the state court from which the case was removed, and, thereafter, **CLOSE** the case.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on August 20, 2020.

*[signature]*
ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record